## PARTIN v. MICHAELS ART BRONZE CO., Inc.

### No. 10866.

United States Court of Appeals
Third Circuit.

Argued Feb. 3, 1953.

Decided March 13, 1953.

Louis Vaira, Pittsburgh, Pa. (Premo J. Columbus, Pittsburgh, Pa., on the brief), for appellant.

Rex Rowland, Pittsburgh, Pa. (Smith, Buchanan, Ingersoll, Rodewald & Eckert, Pittsburgh, Pa., Hulse Hays, Jr., Taft, Stettinius & Hollister, Cincinnati, Ohio, on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

This is an action for libel and the question involved on this appeal is the jurisdiction of a federal court to hear the case.

The resort to the federal court is on the basis of diversity only, the defendant being a Kentucky corporation and the plaintiff a citizen of Pennsylvania. The defendant in Kentucky wrote a letter which, for the purpose of this case, may be assumed defamatory. The letter was addressed to someone in New Jersey, but the plaintiff charges that the defendant mailed it to a recipient in Pennsylvania. It will be assumed, for the purpose of discussion, that the defendant caused the publication in Pennsylvania, although this may or may not be the fact.

The defendant urges that the action should be dismissed because it is not subject to suit in Pennsylvania. The district court agreed and dismissed. The plaintiff contends that this dismissal was error.

From the findings of fact we learn that the defendant Kentucky corporation has not registered to do business in Pennsylvania. It manufactures and distributes parking meters. Between 1946 and 1950 two orders were received for the installation of parking meters in Pennsylvania. The contracts were made by the acceptance of purchase orders received in Covington, Kentucky. Shipment was made directly to purchasers for installation. The defendant sent a skilled technician to install the meter heads and adjust them. The defendant also manufactures and distributes bronze memorial tablets and other metal products. In the five-year period mentioned above, it received, accepted and filled orders amounting to $138,724 at its offices in Covington, Kentucky, for Pennsylvania customers. The material was shipped directly to the customers and was erected and installed by them. In two instances orders were accepted by the defendant to furnish and install art metal work in Pennsylvania. The material was shipped from Covington, Kentucky, to Pennsylvania where the work was done by local workmen under the supervision of a skilled employee from the defendant's offices. The defendant has sales representatives in Pennsylvania. These representatives are not subject to the control of the defendant but operate independently, meet their own expenses, and are paid

on a commission basis. They have no authority to bind the defendant by contract or to collect the price of goods for which they take orders. On the basis of these facts, the district court concluded that the defendant was not doing business within Pennsylvania.

It is now too clear to require discussion and citation of authority that a foreign corporation which carries on activities within a State of the United States is subject to suit there under certain circumstances. There are two questions involved in the assertion of this jurisdiction over a foreign corporation. One is the question whether the State seeks to assert jurisdiction under a given set of facts. The second question is whether the assertion of jurisdiction by the State is permitted, under the circumstances, by the Constitution of the United States.

Because a state may exercise jurisdiction it does not follow that it does do so, much less that it must. "A state does not necessarily exercise judicial jurisdiction through any particular court, and it may not choose to exercise the judicial jurisdiction which it has through any court." Restatement, Conflict of Laws, § 73, Comment a. "The existence of jurisdiction in a state does not depend upon its exercise. A state may have jurisdiction although it never exercises it." Restatement, Conflict of Laws, § 46, Comment f.[1]

This requirement that the state provide for the exercise of jurisdiction in a particular set of circumstances is emphasized by the language of Restatement, Judgments, §§ 22 and 23. Section 22 provides:

"A court by proper service of process may acquire jurisdiction over an individual not domiciled within the State who carries on a business in the State, as to causes of action arising out of the business done in the State, if a statute of the State so provides at the time when the cause of action arises."

Section 23 provides:

"A court by proper service of process may acquire jurisdiction over an individual not domiciled within the State who does acts or owns things in a State which are of a sort dangerous to life or property, as to causes of action arising out of such acts or such ownership, if a statute of the State so provides at the time when the cause of action arises."

And Comment a. following § 23 says:

"The rule stated in this Section is not applicable if at the time when the cause of action arose there was no statute in the State providing for the acquiring of jurisdiction over the defendant."

So the first question which comes up in a case like the one at issue is whether the State, here Pennsylvania, has, through legislation plus the judicial application thereof, asserted jurisdiction over the defendant. The Supreme Court said in an analogous case: "We accept the decision of the Supreme Court of Arkansas as to what constitutes the doing of business in that state within the meaning of its own laws." Kansas City Structural Steel Company v. Arkansas, 1925, 269 U.S. 148, 150,[2]

1. It is of course possible that denial or limitation by a state of the jurisdiction of its courts may violate the federal Constitution. Angel v. Bullington, 1947, 330 U.S. 183, 188, 67 S.Ct. 657, 91 L.Ed. 832; McKnett v. St. Louis & S. F. Ry. Co., 1934, 292 U.S. 230, 233, 54 S.Ct. 690, 78 L.Ed. 1227. No constitutional question of this, or any, sort has been raised in this case.

2. Appellant calls our attention to a sentence from Moore's Federal Practice § 4.25 (2d ed. 1948) wherein Professor Moore says: "Whether a foreign corporation or other business entity is doing business in a state is a matter of general, not local law." From this appellant argues that we cannot make reference to the law of Pennsylvania if the result is to limit federal jurisdiction. Appellant, and Professor Moore, are supported by Barrow Steamship Co. v. Kane, 1898, 170 U.S. 100, 18 S.Ct. 526, 42 L. Ed. 964, cited by Professor Moore for the above quotation, which declared that the scope of federal jurisdiction is a matter of federal law and cannot be impaired by any state statute. The case was cited and followed in David Lupton's Sons Co. v. Automobile Club of America, 1912, 225 U.S. 489, 32 S.Ct. 711, 56 L.Ed. 1177, in

46 S.Ct. 59, 60, 70 L.Ed. 204. Judge Hand, in Bomze v. Nardis Sportswear, Inc., 2 Cir., 1948, 165 F.2d 33, 35, thus stated the double consideration; " * * * thus the first question is whether the service was valid under the New York decisions. If we conclude that it was not, of course the case ends; but, if we conclude that it was, there arises the second question: i. e. whether the service was valid under the Constitution."

This analysis has been adopted by the First Circuit in Pulson v. American Rolling Mill Co., 1948, 170 F.2d 193, and Kelley v. Delaware, L. & W. R. Co., 1948, 170 F.2d 195. In the Pulson case the court said (through the writer of this opinion but supported by the other members of the court):

"There are two parts to the question whether a foreign corporation can be held subject to suit within a state. The first is a question of state law: has the state provided for bringing the foreign corporation into its courts under the circumstances of the case presented? There is nothing to compel a state to exercise jurisdiction over a foreign corporation unless it chooses to do so, and the extent to which it so chooses is a matter for the law of the state as made by its legislature. If the state has purported to exercise jurisdiction over the foreign corporation, then the question may arise whether such attempt violates the due process clause or the interstate

commerce clause of the federal constitution. Const. art. 1, § 8, cl. 3; Amend. 14. This is a federal question and, of course, the state authorities are not controlling. But it is a question which is not reached for decision until it is found that the State statute is broad enough to assert jurisdiction over the defendant in a particular situation." [170 F.2d 194.]

When we reach the question of whether the jurisdiction which the State is attempting to exercise is permitted by the Constitution of the United States, then we have a federal question upon which the Supreme Court of the United States has the last word. This was recognized by Judge Hand in the Second Circuit decision just cited. He speaks of the "new enclave, now opened to them [the States]" by the International Shoe Co. v. Washington case, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; 165 F.2d at page 36.

The decision in International Shoe Co. v. Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, of which Judge Hand was speaking, presented the question whether the State of Washington was going outside constitutional limits in asserting jurisdiction for its courts without there having been, in the State, a course of contract-making by the representatives of the defendant. The court, in holding that what Washington did was constitutional, made possible a wider assertion of State judicial jurisdiction than theretofore had been thought permissible. That is what Judge

which the Supreme Court held that a New York statute forbidding courts of that state to entertain a suit on a contract made by a foreign corporation not registered to do business in New York did not and could not prevent federal courts sitting in a diversity situation from entertaining such a suit.

But in Angel v. Bullington, 1947, 330 U.S. 183, at page 192, 67 S.Ct. 657, at page 662, 91 L.Ed. 832, the Court said: "Cases like Lupton's Sons Co. v. Automobile Club * * * are obsolete insofar as they are based on a view of diversity jurisdiction which came to an end with Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. That decision drastically limited the power of federal district

courts to entertain suits in diversity cases that could not be brought in the respective State courts * * *. Of course, where resort is had to a federal court not on grounds of diversity of citizenship but because a federal right is claimed, the limitations upon the courts of a State do not control a federal court sitting in the State. * * *" No federal right is claimed by appellant here.

The other case cited by Professor Moore is the post-Erie decision of Hedrick v. Canadian Pacific Ry. Co., D.C.S.D. Ohio, 1939, 28 F.Supp. 257, which held the Erie rule inapplicable to the issue whether state or federal law governs federal jurisdiction in a diversity case. We need only note that this decision preceded Angel v. Bullington, supra.

Hand meant by the "enclave" which the decision opened.

Since that time there have been two more decisions which open the "enclave" still further. These are Travelers Health Ass'n v. Com. of Virginia, 1950, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154, and Perkins v. Benguet Consolidated Mining Co., 1952, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485. Each of them, like the International Shoe case, involved adjudication by the Supreme Court upon the question how far the State could go in asserting jurisdiction without violating the defendants' rights under the Constitution. In each instance the court considerably extended the concept of what used to be thought of as the reach of the judicial arm of a State of the United States.

But despite plaintiff's reliance upon the International Shoe case, we do not reach that question here. An examination of Pennsylvania Supreme Court decisions discussed in the recent case of Lutz v. Foster & Kester Company, Inc., 1951, 367 Pa. 125, 79 A.2d 222, shows us pretty clearly that the Pennsylvania courts would not regard this defendant corporation as subject to their jurisdiction. We do not, therefore, get to the question of how far Pennsyl-

vania could go if it cared to exercise all the power it constitutionally had.[3]

There is also the additional point that the alleged cause of action did not arise out of business done in this state as it did arise in Woodworkers Tool Works v. Byrne, 9 Cir., 1951, 191 F.2d 667. That has been assumed to be a Pennsylvania requirement for many years,[4] and was thought to be necessary in order not to transgress Constitutional limitations. The fact that the Supreme Court in the Perkins case held that such a limitation is no longer required, does not, as the Supreme Court said in that decision, compel the State to exercise jurisdiction over causes of action not growing out of local business.

In this case the alleged libel had nothing to do with any business which the defendant had carried on in Pennsylvania. It did mention that the plaintiff had installed meters that "were so troublesome that they were later replaced," but the defamatory part of the letter, if indeed it was defamatory, did not concern anything done in Pennsylvania at all.

The district judge was right in his dismissal. The judgment of the district court will be affirmed.

3. An interesting and much commented upon recent decision in Vermont has held that the commission of a tort there is sufficient, under Vermont law, to sustain jurisdiction of Vermont courts in a suit for the tort. Smyth v. Twin-State Improvement Corp., 1951, 116 Vt. 569, 80 A.2d 664, 25 A.L.R.2d 1193. The comments, so far, are as follows: 37 Cornell L.Q. 458 (1952); 56 Dick.L.Rev. 257 (1952); 50 Mich.L.Rev. 763 (1952); 36 Minn.L.Rev. 264 (1952); 25 Temple L. Q. 187 (1951); 100 U. of Pa.L.Rev. 598 (1952).

4. In Goodrich-Amram, Standard Pennsylvania Practice, § 2077(a)-21 and § 2077 (a)-22 (1940 ed.) we find the following commentary on Pennsylvania jurisdictional statutes: "Unlike the non-resident defendant statutes already considered, the statutes applicable to the non-resident engaging in business do not contain any limitation respecting the nature of the action in which the extra-state service may be employed or restricting such actions to those upon causes of action arising within the state * * *."

"* * * However, while the statutes may be construed as applicable to causes of action not arising from the business in which the defendant is engaged and to causes of action not arising within the state, it is believed that such broad construction would render the statutes unconstitutional * * * the Acts should be construed as applicable only to causes of action arising from business * * * conducted within the state * * *."

"* * * In order to avoid an unconstitutional construction, the statutes should be construed as inapplicable if the cause of action arises outside the state from transactions and occurrences taking place outside the state."

No Pennsylvania case that we can find contradicts this construction of the statutes in question, although it is to be admitted that the problem is not even discussed. See, e.g., Holliday v. Pacific Atlantic S.S. Corp., 1946, 354 Pa. 271, 47 A.2d 254. Apparently no one has ever doubted that the narrow construction above mentioned is the proper one. See Restatement, Judgments, §§ 22, 23.

BIGGS, Chief Judge (concurring).

Though I do not disagree with the conclusion which the court has reached or with some of the language of the majority opinion, I deem it desirable nonetheless to file a *caveat* against certain implications which may perhaps be read into what has been written therein.

The right of a citizen of a state to bring suit against a citizen of another state in a United States district court is a right granted and secured by Section 2, Article III, of the Constitution of the United States. In Barrow Steamship Co. v. Kane, 1898, 170 U.S. 100, 111, 18 S.Ct. 526, 530, 42 L.Ed. 964, the Supreme Court, by Mr. Justice Gray, stated: "The object of the provisions of the constitution and statutes of the United States in conferring upon the circuit courts of the United States jurisdiction of controversies between citizens of different States of the Union * * * was to secure a tribunal presumed to be more impartial than a court of the state in which one of the litigants resides. The jurisdiction so conferred upon the national courts cannot be abridged or impaired by any statute of a state. * * *" To this I would add—"or of any decision by a state tribunal." Neither Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, nor any of the decisions which followed it, require a contrary conclusion. See Pike v. New England Greyhound Lines, D.C., 93 F.Supp. 669, 671, distinguishing Pulson v. American Rolling Mill Co., 1 Cir., 170 F.2d 193, and Moore's Federal Practice § 425, 2d ed. 1948, and the notes cited to the text.

It is clear that the majority opinion relies on decisions of the Supreme Court of Pennsylvania as to what constitutes doing business in the Commonwealth but it is not apparent whether the decision is based on a construction of Fed.Rules Civ.Proc., rule 4(d) (7), 28 U.S.C.A. providing *inter alia* for a method of service of process under state practice, or strictly on the doctrine of Erie R. Co. v. Tompkins. The reasoning of the majority opinion seems to indicate that the basis of the decision is that a foreign corporation may not be served with process unless it is doing business in the state and the question of whether it is doing business in the state is one which must be decided by the law of the state.

The majority opinion correctly points to the provisions of the Fourteenth Amendment, as supplying limitations on the powers of a state, and does not emphasize the provisions of Section 2, Article III of the Constitution which gives *locus standi* to the foreign litigant. Concededly, federal jurisdiction must be determined by federal law, albeit federal law in diversity cases calls for reference to the background of state law. But this does not mean that a state by arbitrary application of a statute or by judicial decision may prevent a plaintiff from maintaining a suit when the defendant corporation has actually been or is doing business in the state. Nor could a state by legislation or its courts by decision render service of process difficult or impossible. Cf. the decision of the Supreme Court of Pennsylvania in Lutz v. Foster & Kester Company, Inc., 1951, 367 Pa. 125, 79 A.2d 222.

I agree with the majority that in the light of the case just cited the defendant in the instant case would probably be deemed not to be doing business in Pennsylvania by the Supreme Court of Pennsylvania. But the Lutz decision presents too narrow a construction of doing business when measured by Section 2 of Article III of the Constitution.

I would vote to reverse the court below were it not for the fact that the subject matter of the suit does not arise out of the sale of parking meters by the defendant in Pennsylvania. The cause of action in the instant case is really unrelated to the activities of the defendant in the Commonwealth of Pennsylvania. Cf. Woodworkers Tool Works v. Byrne, 1951, 9 Cir., 191 F.2d 667. The instant case does not, therefore, meet the test laid down by the Supreme Court of the United States in International Shoe Co. v. Washington, 326 U.S. 310, 316–317, 66 S.Ct. 154, 90 L.Ed. 95, and the judgment of the court below should be affirmed.