## Ramey v. Donora Southern Railroad Co.

Before Carson, P. J., Cummins and Weiner, JJ.

*Vincent R. Massock*, for plaintiff.

*Davidson & Fergus*, for defendant.

*McCune & Greenlee, Francis H. Patrono, Charles G. Sweet* and *Stephen D. Marriner*, for additional defendants.

WEINER, J., October 22, 1956.—Cornelius O. Ramey, plaintiff above named, filed his action in trespass at the

above number and term against the Donora Southern Railroad Company, the original defendant above named, in which he seeks to recover damages for injuries alleged to have been sustained by him on September 22, 1952, while engaged in his regular employment with the American Steel and Wire Company at Donora, in this county, as the result of a door of a railroad falling upon him. Additional defendants were brought in from time to time, one of them being the Reading Company. This additional defendant in turn brought in the Seaboard Air Lines, alleging that this additional defendant was liable over to the Reading Company by reason of its ownership and maintenance of the box car in question.

Preliminary objections were filed by the Seaboard Air Lines and by agreement, preliminary objections number three and four are not to be considered at this time, without prejudice to either party. The case now comes before the court on the remaining preliminary objections, which raise the question of jurisdiction of this court over the said Seaboard Air Lines for the reason, as claimed, that it is not doing business within the Commonwealth of Pennsylvania, within the meaning of the laws of Pennsylvania, and that service, as made in this case, was not legally effective.

In lieu of taking depositions or other testimony, counsel for the Reading Company and counsel for the Seaboard Air Lines have filed a stipulation of record wherein it is agreed that the court shall dispose of the preliminary objections by deciding the question of jurisdiction and service only, and further agreeing that the court shall be entitled to accept as true the affidavits attached to said stipulation stating the type and extent of the activities carried on by the Seaboard Air Lines in Pennsylvania.

These affidavits are made by four employes of the Seaboard Air Lines, each showing that the affiant is

in charge of a phase of their employers' activities in either of the two offices maintained by the Seaboard Air Lines in Pennsylvania, the one at Pittsburgh, and the other in Philadelphia.

The affidavits reveal that the only purpose of both offices is to solicit passenger and/or freight business for the Seaboard Air Lines Railroad Company. The leases for the offices, the furnishing of the supplies, the payment of all salaries and expenses, are all arranged for or done at the main office of the railroad at Norfolk, Va. No tracks of the railroad are located within the State of Pennsylvania and the company operates no trains or locomotives in the State and transports no passengers or freight within the State.

In connection with the solicitation of freight business, all physical arrangements for the shipment of freight destined for the lines of the Seaboard Railroad and solicited by either office are made by the representatives of the originating carrier. None of the employes of either office make any collection for freight or other charges on behalf of their employer, and none have authority to adjust claims, to bring suits, to accept service of process or in any other way to bind the Seaboard Air Lines Railroad Company.

As to the passenger business, when prospective passengers desire reservations or tickets over the lines of their railroad, they are obtained by the employes of those offices by application made to the ticket office of the railroad company on whose lines the travel will originate. Tickets are issued by such initiating carrier and delivered to these employes who in turn deliver the tickets to the prospective passenger on receipt of the purchase price which is then paid or delivered to the originating carrier.

In other words no money transactions are conducted by any of these employes for the company, no cash or

other valuable consideration is received or disbursed in either office for or on behalf of said company and no bank accounts are maintained by either office.

It is the contention of the Seaboard Air Lines that the mere solicitation of business within the Commonwealth of Pennsylvania does not constitute doing business so as to give our court jurisdiction over the said railroad or to authorize service of any process on any of their employes in charge of such solicitation. In support of that argument they cite the case of Shambe v. Delaware & Hudson Railroad Company, 288 Pa. 240, which they claim was affirmed by the case of Lutz v. Foster and Kester Company, Inc., 367 Pa. 125.

What counsel for the Seaboard Air Lines overlooks is that both these cases were decided under the Act of April 18, 1851, P. L. 353, 12 PS §1310. That act has now been replaced by the Act of September 26, 1951, P. L. 1475, 15 PS §2852-1011, amending the Pennsylvania Business Corporation Law of May 5, 1933, P. L. 364, which now defines "doing business" within the State of Pennsylvania, as follows:

"For the purposes of this act, the entry of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose with the intention of thereby initiating a series of such acts, shall constitute 'doing business' ".

From the affidavits submitted, it is apparent that the purpose of the maintenance of these two offices in Pennsylvania clearly brings the same within the purview, intent and meaning of this amendment of 1951.

The solicitation, either of freight or of passenger business, implies "the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit" to the Seaboard Air Lines Railroad. The court can take judicial notice of the fact that the activities

of these employes, as revealed by the affidavits, is for pecuniary benefit or gain to the said railroad, and such passenger or freight business as may result from the solicitation by or through these two offices must necessarily result in pecuniary benefit to it. The court can also take judicial notice of the fact that there is keen competition between all railroads in their efforts to secure business, and that the maintenance of these offices is a regular, continuous and sustained course of its business.

It is clear to this court that the amendment of 1951 was a proper declaration of public policy on the part of our legislature and was enacted to overcome the effect of the rules laid down in the case of Shambe v. Delaware & Hudson Railroad Co., supra. This court is inclined to agree with the observation of Judge Goodrich of the U. S. Third Circuit Court of Appeals, in the case of Partin v. Michaels Art Bronze Co., Inc., 202 F. 2d 541, that the trend has been toward a wider assertion of the power of the State over nonresidents and over foreign corporations than was considered permissible when the tradition about "mere solicitation" was developed and that the problem should be solved in the light of commercial actuality, and not in the aura of juristic semantics.

In this case of Partin v. Michaels Art Bronze Co., supra, the court was considering, as here, the effect of this legislative amendment of 1951 in Pennsylvania, and reached the same conclusion as the court does in this case, that the extent of the activities of the Seaboard Air Lines, as revealed by the affidavits on file, makes that railroad subject to the jurisdiction of our court. Even prior to the enactment of this amendment, there had arisen a feeling that where, as in this case, soliciting activities were a regular, continuous and sustained course of business, the "mere solicitation" rule should be abandoned and the problem approached

in the light of commercial reality. It is clear to this court that the Pennsylvania legislature by the said amendment intended this result.

This court recognizes the principle that before a State may compel a corporation of another State to submit to its jurisdiction, or before a corporation may legally be in another State for the purpose of service of process, it must be present in the State by the act of someone authorized to represent it. And the acts of the agent must be done within the State sufficiently to indicate an intention to be bound by her laws relative to suits against it.

The fact that a foreign corporation is engaged solely in interstate commerce does not prevent its being sued in our courts or becoming amenable to our laws. If what they are doing amounts to "doing business" within the State, the requirements of the Federatl Constitution are satisfied, for then such corporations are within the State, receiving the protection of its laws.

The court also recognizes that the State does not possess an unlimited right to impose its jurisdiction on foreign corporations. If its acts are not sufficient to constitute "doing business" they cannot be held. But where, as here, a foreign corporation continues to maintain offices within the State for the purpose of doing certain acts by which the performance of such acts makes them amenable to our laws, it must be presumed that by doing so an intention is indicated by that foreign corporation to be bound by our laws relative to suits against it.

As to the question of service, rule 2180 permits service by handing process to an "agent or person for the time being in charge of, and only at, any office or usual place of business of the corporation . . .". The court is therefore compelled to hold that under this rule service of this case was proper and legal.

By the force of the Act of 1951, supra, the Seaboard Air Lines, in the opinion of this court, is now subject to our laws as to jurisdiction and service, by permitting the continuance of the series of acts admitted in the affidavits submitted. It was "doing business", within the meaning of our present laws and thereby subject to its being sued in our courts. And by placing persons in charge of these offices for the purposes admitted, such persons became the "agent or person for the time being in charge of the offices of the corporation", upon whom service of process may legally be made under our laws giving our Rules of Civil Procedure the legal force and effect.

Our Supreme Court has recognized the right of the legislature to determine the place where legal action is to be instituted in the State where a foreign corporation is doing business in the State: Shambe v. Delaware & Hudson Railroad Co., supra, at page 246. And at page 247 of that same opinion the right of the legislature to make such corporations amenable to suit, under the Federal Constitution, is also recognized.

In determining this question of jurisdiction over foreign corporations, each case must depend on its own facts and each must show that the requirements to give jurisdiction are present. From the facts admitted by the affidavits in this case, as construed in the light of the amendment of 1951, and under our Rules of Civil Procedure, all the elements permitting jurisdiction and service of process, are found.

Accordingly the court makes the following

### Order

And now, October 22, 1956, the preliminary objections filed by the Seaboard Air Lines attacking the jurisdiction of this court and the service of process in this case are hereby overruled.