UNITED STATES of America, For the Use and Benefit of George W. BERNADOT, Plaintiff,

v.

GOLDEN WEST CONSTRUCTION COMPANY, a corporation, and General Insurance Company of America, a corporation, Defendants.

Civ. No. C-50-60.

United States District Court
D. Utah,
Central Division.

Feb. 2, 1961.

———◆———

Leonard W. Elton and Max K. Mangum, Salt Lake City, Utah (Rich, Elton & Mangum, Salt Lake City, Utah), for plaintiff.

William J. Cayias and D. Eugene Livingston, Salt Lake City, Utah, Richard I. Singer, San Diego, Cal. (Rubin, Seltzer & Solomon, San Diego, Cal.), for defendants.

CHRISTENSON, District Judge.

Plaintiff, as a subcontractor under the prime contractor on a government project, sued under the Miller Act, 49 Stat. 794, 40 U.S.C.A. § 270b, for payment for performance under the sub-contract and, in the alternative, for the reasonable value of services and materials furnished under the sub-contract. The defendant prime contractor and its surety deny performance and assert a counterclaim for damages for plaintiff's alleged failure to perform the sub-contract. Plaintiff has moved to strike the counterclaim on the basis of a question of law reserved in the pre-trial order, on the argument that it cannot be maintained in this action because the defendant prime contractor is a foreign corporation not qualified to do business in the State of Utah. This presents a problem that does not appear to have been directly decided in the published decisions. I have before me for reconsideration my oral decision that the counterclaim should be stricken.

A conclusion best can be reached against a statutory and decisional background.

The Utah law, Sec. 16–8–3, U.C.A. 1953, provides as follows:

"Disabilities of noncomplying foreign corporations.—Any foreign corporation doing business within this state and failing to comply with the provisions of sections 16–8–1 and 16–8–2 shall not be entitled to the benefit of the laws of this state relating to corporations, and shall not sue, prosecute or maintain any action, suit, counterclaim, cross complaint or proceeding in any of the courts of this state on any claim, interest or demand arising or growing out of or founded on any tort occurring, or of any contract, agreement or transaction made or entered into, in this state by such corporation * * * and every contract, agreement and transaction whatsoever made or entered into by or on behalf of any such corporation within this state or to be executed or performed within this state shall be wholly void on behalf of such corporation and its assignees and every person deriving any interest or title therefrom, but shall be valid and enforceable against such corporation * * * (or) person * * *.

▮▮▮ It seems clear that the defendant contractor was doing business within the State of Utah, at least in the performance of the general contract, and that the sub-contract, for a breach of which it interposes its counterclaim, was made within the State of Utah and was to be performed here. See Kansas City Structural Steel Co. v. State of Arkansas, for Use and Benefit of Ashley County, 1925, 269 U.S. 148, 46 S.Ct. 59, 70 L.Ed. 204. The Utah Supreme Court has construed the Utah statute in a literal manner and has refused to allow suits to be brought by non-complying corporations. Mud Control Laboratories v. Covey, 1954, 2 Utah 2d 85, 269 P.2d 854. And ordinarily a federal court, at least in a diversity or other case in which rights are to be determined under State law, will give affect to such disabilities. Phillips Co. v. Everett, 6 Cir., 1919, 262 F. 341; Woods v. Interstate Realty Co., 1949, 337 U.S. 535, 69 S.Ct. 1235, 93 L. Ed. 1524; Cohen v. Beneficial Industrial Loan Corp., 1949, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528; Ragan v. Merchants Transfer & Warehouse Co., 1949, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520.

The Miller Act gives the one furnishing labor or material in the prosecution of the work in respect to which a payment bond is furnished under Section 270a of Title 40 U.S.C.A. a right to sue on such payment bond, " * * * for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums *justly due* him." (Emphasis mine). Id., Sec. 270b.

Speaking of prime contracts, 40 U.S.C.A. § 341 provides, inter alia, that, "The Administrator of General Services is authorized to carry on the construction work herein authorized by contract, or otherwise, as he deems most advantageous to the United States."

In Barnard-Curtiss Company v. United States, 10 Cir., 1957, 244 F.2d 565, 10 Cir., 1958, 257 F.2d 565, certiorari denied, 358 U.S. 906, 79 S.Ct. 230, 3 L. Ed.2d 227, a counterclaim for delay in completing the work was recognized by the Court in favor of the prime contractor, subject to certain proof, which implied an interrelationship between the counterclaim and the primary claims under the Miller Act. Other than on this implicit point, the case is not helpful.

Continental Casualty Co. v. Schaefer, 9 Cir., 1949, 173 F.2d 5, certiorari denied 337 U.S. 940, 69 S.Ct. 1517, 93 L.Ed. 1745, considered the question of what substantive law should govern in a Miller Act case on a point not resolved by the Federal statute. The Court said that where the project was in Washington, all relevant facts occurred there, and the issue did not involve the construction or application of the federal statute, the

issue would be decided by the federal court as it would have been decided by a State court sitting in Washington, and Washington's substantive law of contracts would be applied. But this case also demonstrates that actions in form for damages for breach of contract may be considered to come under the Miller Act where they involve the furnishing of labor or materials.

■ The right of action given under the Miller Act with respect to bonds of contractors for public buildings or works is a direct action on the bond for which the surety is liable, but such a claim is raised only upon the performance of labor or the furnishing of material. United States for use of Araco Co., v. Somers Construction Co., D.C.Del.1959, 184 F.Supp. 563.

Thus in L. P. Friestedt Co. v. U. S. Fireproofing Co., 10 Cir., 1942, 125 F.2d 1010, it was held that under the Heard Act, 40 U.S.C. § 270, the surety was not liable to the sub-contractors for losses sustained because of a breach of contract by the contractor in causing delays which prevented the completion of the work within the time contemplated, where the subcontractor did not furnish any extras for the completion of the contract and the claims for the losses did not arise under the contract but outside of it.

The case of the United States for the use of James F. O'Neil Co. v. Malan Construction Corp., D.C.E.D.Tenn.1958, 168 F.Supp. 255, involved an action by subcontractors against the general contractor and its surety under the Miller Act. The defendant moved for summary judgment on the ground that the plaintiff, a foreign corporation, had failed to qualify to do business in Tennessee as required by state law. The motion was denied by Judge Taylor on the ground that the State had no power to deny access to the federal courts in cases not founded on diversity of citizenship.

The doctrine of Woods v. Interstate Realty Company, supra, relied on by defendants, was expressly limited to diversity cases. The case at bar is not founded upon diversity but upon a Federal statute and the counterclaim, being compulsory, is ancillary and did not require diversity. In view of this, Lyon v. Quality Courts United, 6 Cir., 1957, 249 F.2d 790, may indicate that limitations imposed by state law should be as irrelevant as there held to be with respect to the assertion of a primary right not based on diversity jurisdiction.

It is true that the last mentioned analogy was not recognized in a California case. In United States for use of Los Angeles testing Laboratory etc. v. Rogers & Rogers, U.S.D.C.S.D.Cal.1958, 161 F. Supp. 132, a counterclaim by the prime contractor against the plaintiff, sub-contractor, for substandard materials was involved. It was said by Judge Mathes that this counterclaim, being compulsory, was ancillary to the original jurisdiction under the Miller Act and that no independent jurisdictional ground was essential to support the counterclaim. In considering what law governed a related question of the liability of an architect, brought into the case as a third party defendant, the court held that the law of California governed as to the architect's liability, even though the action was not a diversity action. "There is no supervening federal interest here which dictates the fashioning of uniform federal law to displace the law of the State where all parties concerned reside and all material facts occurred. Cf. Textile Workers Union v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972." 161 F.Supp. at page 135.

In United States for use of U. S. Steel & Iron Works Co. v. Henly, D.C.Idaho 1954, 117 F.Supp. 928, an action was brought to recover on a bond which had been issued by a foreign surety company under the Miller Act. An Idaho statute was held applicable which provided that any insurer which failed to pay the amount justly due under its policy should pay reasonable attorneys' fees in any action in any court of the State for recovery on its contract.

A late case from this Circuit touched upon the general problem. Hoeppner Construction Company v. United States, 10 Cir., 1960, 287 F.2d 108. The United States for the use and benefit of the sub-

contractor brought the action to recover from the prime contractor and the surety on the payment bond. The prime contractor did not appear. The surety pleaded, among other things, that the claim was barred for failure of the subcontractor to file or record in Colorado a partnership affidavit required by the law of that state. It was also asserted in defense that the prime contractor had furnished material and labor to the subcontractor which constituted an off-set and counterclaim against the sub-contractor. The Court found and determined in effect that the prime contractor and the surety on the payment bond were indebted to the sub-contractor in the sum of $10,645.81, and that the sub-contractor was indebted to the prime contractor in the sum of $2,091.37. Judgment was entered for the sub-contractor for the difference, with interest. The Court had this to say on the problem raised by the state law:

"The judgment is challenged on the ground that the subcontractor failed to file for record in Colorado a partnership affidavit as required by the law of that state. It is provided by statute in Colorado that any partnership or association of persons doing business or carrying on any trade in the state under any other name than the personal name or names of his or its constituent members shall file for record with the clerk and recorder of a specified county an affidavit setting forth certain specified information. C.R. S.1953, § 141–2–1. And it is further provided by statute that in default or filing such affidavit, a partnership shall not be permitted to prosecute suits for the collection of debts until the affidavit has been filed. C.R. S.1953, § 141–2–2. But the right to maintain this action does not have its source in the law of Colorado. The right to institute and maintain the action in the United States District Court is expressly granted by the Miller Act. 40 U.S.C.A. § 270b. And the statutes of Colorado requiring the filing of the affidavit and withholding the right to prosecute an action for the collection of a debt until the affidavit has been filed do not condition or otherwise proscribe in any manner the right of the United States to institute and maintain in the United States Court for the use and benefit of a subcontractor an action against the prime contractor and the surety on the payment bond to recover a balance due for materials furnished and labor performed in pursuance of the subcontract."

It is unnecessary at this time to decide whether a prime contractor, as counterclaimant in a Miller Act case, similarly may assert its rights notwithstanding its failure to comply with the Utah law governing the qualification of foreign corporations. Enough has been said to indicate that this is a possibility, but one not free from doubts as far as affirmative relief is concerned. The counterclaim is a compulsory one that must now be interposed in this Miller Act action or not at all (Rule 13(a) F.R.Civ.P., 28 U.S.C.A.).

But it is clear that as an affirmative defense to the sub-contractor's action, under the Miller Act, by way of set-off or under the general issue, the subject matter of the so-called counterclaim may be considered. The suit is upon the contract for materials and labor and the assertion of the defendants that the contract was not performed or was modified as the result of the non-performance of the sub-contractor, with attendant financial responsibility on the part of the sub-contractor qualifying its rights to recover, is a part and parcel of the issues before the court on the Miller Act complaint.

If the failure to qualify as a foreign corporation would not preclude a plaintiff from maintaining an action under the Miller Act, of which I am convinced, it seems to me that such failure on the part of the defendant would not disqualify it from interposing any defense by way of denial of performance, or of off-set by reason of assistance extended by the defendant to the sub-contractor in such

performance. Otherwise, the plaintiff's right itself would be affected for the Miller Act, as noticed above, says he can recover only the sums "justly due." If a sub-contractor's recovery cannot be diminished by reason of state statutes such as the one here involved because his rights granted by a federal statute will not be permitted to be conditioned by state law, they should not be permitted to be enlarged for similar reasons. Perhaps this enters into the ambit of a principle involved in Dice v. Akron, Canton and Youngstown R. Co., 1952, 342 U.S. 359, 72 S.Ct. 312, 96 L. Ed. 398, wherein it was said that State laws are not controlling in determining what are incidents of Federal rights; but see Wunderlich Contracting Co. v. United States, 10 Cir., 1957, 240 F.2d 201, certiorari denied 353 U.S. 950, 77 S.Ct. 861, 1 L.Ed.2d 859, with respect to interest. But such cases as Henly, supra, do seem to qualify what is "justly due" a Miller Act plaintiff on the basis of state law.

Merely because the pleading against which the motion to strike is directed is denominated a "counterclaim" is not determinative. A counterclaim itself may diminish or defeat the recovery sought by the opposing party (Rule 13(c) F.R. Civ.P.); and in any event, if a party mistakenly designates a defense as a counterclaim the court may treat the pleading as if there had been a proper designation (Rule 8(c) F.R.Civ.P.).

To hold that the defendants cannot urge matters referred to in the "counterclaim" defensively, which would be the effect if a motion to strike were granted, would be contrary to the rationale of the decision of this Circuit last cited. Matters in defense of a Miller Act action seem within the protection of the doctrine that the right to bring such action may not be qualified by State law. Reference may be made to United States for use of Fairbanks Morse & Co. v. Bero Construction Corporation, D.C.S.D.N.Y. 1957, 148 F.Supp. 295, for a decision and consequence of one phase of the difference between a counterclaim seeking affirmative relief and the same allega-tions considered defensively and as a set-off. Moreover, the Utah statute does not purport to disqualify a non-complying foreign corporation from interposing matters in defense, John C. Cutler Ass'n v. DeJay Stores, 1955, 3 Utah 2d 107, 279 P.2d 700, except as that result might be reached by considering a contract void as to it. Were we to apply the principle relied upon by plaintiff that in a Miller Act case the rights and liabilities of the parties under the sub-contract as to all issues not involving the interpretation or coverage of the Miller Act are governed by State law, United States ex rel. Crowder v. Fidelity & Deposit Co. of Maryland, D.C.W.D.La.1956, 144 F.Supp. 322, Continental Casualty Co. v. Schaefer, supra, the interposition of the State statute against the defenses of the prime contractor would not be countenanced. These at least would seem to directly involve the coverage of the Act.

It would not materially simplify discovery or other preparatory steps to go beyond the pending motion and decide whether recovery could be had under the "counterclaim" for affirmative relief. The subject matter will have to be investigated and presented by the parties as a possible defense anyway. A resolution of this potential further problem can better be decided in the context of the trial, if indeed the facts make it necessary to decide it at all in this case.

The order striking the counterclaim accordingly is vacated.

Other problems upon which the court indicated, at the pre-trial conference, it would make preliminary rulings are whether the failure of plaintiff to file an affidavit of doing business under a fictitious name and plaintiff's failure to secure a Utah General Contractor's license preclude plaintiff from bringing this action. I am of the opinion that the recent case from this Circuit cited above (Hoeppner Construction Company, Inc. v. United States) concludes these questions in principle in favor of the plaintiff and against the contentions of the defendant. See also Platt v. Locke, 1961, 11 Utah 2d 273, 358 P.2d 95.